**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHAWN RINI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    02: 05cv0198 |
| | ) |
| CITY OF PITTSBURGH; JAMES GLICK; | ) |
| and GEORGE CIGANIK, individually and | ) |
| officially, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

September 21, 2006

Presently before the Court is the JOINT MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendants, the City of Pittsburgh; James Glick; and George Ciganik, individually and officially *(Document Nos. 27 and 28)*, and the BRIEF IN RESPONSE TO OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT filed by Plaintiff, Shawn Rini *(Document No. 29)*.

The issues have been fully briefed and the matter is ripe for disposition. After a careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Shawn Rini, on his claims of alleged civil rights violations brought under § 1983 and his claims of false arrest, defamation, and malicious prosecution brought under Pennsylvania common law.  Therefore, for the reasons that follow the Motion will be granted in its entirety.

**PROCEDURAL BACKGROUND**

Plaintiff Shawn Rini ("Plaintiff" or "Rini") brought this lawsuit on February 16, 2005, by the filing of a four-count Complaint in which he alleges his civil rights were violated as a result of the conduct of City of Pittsburgh police officers, James Glick ("Glick") and George Ciganik ("Ciganik"), when they responded to a police call which reported a fight in progress involving Plaintiff and Elmondo Hutchinson ("Hutchinson").  Additionally, Plaintiff alleges violations of state law against Glick and Ciganik in their individual capacities under Pennsylvania common law for false arrest, malicious prosecution, and defamation.

Defendants have filed the instant motion for summary judgment in which they contend that Plaintiff has failed to proffer sufficient evidence to establish a violation of his constitutional rights.   Additionally, Defendants Glick and Ciganik, individually, contend summary judgment is appropriate on Plaintiff's claims brought under Pennsylvania common law as Plaintiff has failed to establish a *prima face* case for false arrest, malicious prosecution, and/or defamation.


**BACKGROUND**

As the law requires, all disputed facts and inferences are resolved most favorable to the Plaintiff.

On February 16, 2004, at approximately 4:36 p.m., Officers Glick and Ciganik received a call for a reported fight in progress at Roland's Auto Sales ("Roland's), McKees

Rocks, Pennsylvania.[1]   When the officers arrived at Roland's, Rini and his brother, Enrique Wilder ("Wilder"), were standing in the parking lot outside of Roland's.  Wilder was holding an aluminum baseball bat at his side.

Glink and Ciganik spoke with Plaintiff and Wilder before going inside Roland's. Plaintiff explained that he was involved in a fight with Hutchinson, who remained inside the building.  Rini told the police officers that both he and Wilder were active security guards, bounty hunters, and employees of Internal Intelligence Agency, a private security firm.

Rini also told Glink and Ciganik that he had been hired by Roland's to repossess vehicles.  In turn, Plaintiff hired his brother, Wilder, to assist in the repossessions.

Glick and Ciganik then entered Roland's and met with several people who had witnessed the incident:  Roland Croner ("Croner"), the owner of Roland's; Florence Macon ("Macon"), the mother of Hutchinson;  Rona Coleman ("Coleman"), the sister of Hutchinson; and Marsha Boehm ("Boehm"), an employee of Roland's.

Apparently, Macon, who had previously purchased a van from Roland's, had brought her vehicle in for service as she was having difficulty with the van.  Prior to Macon's arrival at Roland's, Croner had previously instructed Rini to repossess Macon's vehicle as she was late on her payments.  When Macon arrived at Roland's that day, Rini told her that he was going to repossess her vehicle and that she was not leaving with the van that day.  Rini then instructed Wilder to move their vehicle behind Macon's so that she could not remove it from Roland's parking lot.

---

[1]    Roland's is a business engaged in the selling of used cars, providing financing for customers, and repossessing vehicles when customers are delinquent in their payments.

Hutchinson overheard the conversation between Rini and Macon, and became upset at the tone in which Rini was speaking to his mother.  The record is unclear as to exactly how the fight started or who made the first physical contact; however, all parties agree that Rini and Hutchinson engaged in a physical altercation.

Each witness inside Roland's told the officers that they thought Rini had a gun and/or that he gestured toward a gun during the physical altercation with Hutchinson.  One of the witnesses told the officers that upon exiting Roland's, Rini had given his gun to Wilder.  *See Investigative Report, at 3.*   Up until this point, Glick and Ciganik were under the impression that they were responding to and investigating nothing more than a physical altercation.  Based on the witnesses' statements, however, Glick and Ciganik became concerned about the severity of the incident and called for backup.

Glick and Ciganik then went back outside to question Rini and Wilder about the firearm.  Upon questioning, Wilder stated that a firearm which was registered to Rini was in the trunk of his car and that he had a valid license to carry a firearm.

Rini claimed that he was not in possession of a firearm at any time on that day, and that he had lent his firearm to his brother as they were doing "recovery work" that day and Wilder had forgotten his gun.  Despite claiming that he was not in possession of the firearm, Rini told the officers, on numerous occasions, that he had an Act 235 card[2] and that it permitted

---

[2]    Title 22, Pennsylvania Statutes, section 44, et seq., a/k/a/ Act 235, is known as the Lethal Weapons Training Act.  Act 235 provides that "all privately employed agents, . . . who, as an incidence to their employment, carry a lethal weapon shall be required to attend the [Lethal Weapons Training] program . . in accordance with the requirements or regulations established by the commissioner and upon satisfactory completion of such program, shall be entitled to certification by the commissioner."

(continued...)

him to carry a firearm to and from work.  Rini, however, did not posses a license to carry a concealed firearm.  At this point, the police officers did not arrest Rini.

Based on the witnesses' statements and believing that Rini had been carrying a concealed firearm when he was inside Roland's and had displayed the weapon in a threatening manner, Glick and Ciganik determined it was necessary to contact their supervisor, Sergeant Reyne Kascuta ("Kascuta"), the acting supervisor at the Zone 3 Police Station, with regard to Rini's ability to carry a firearm without a license but with an Act 235 card.  *(See Depo. of Glink at pp. 50-51; Depo of Ciganik at pp. 30-32; Affidavit of Reyne Kacsuta).*  Kascuta, in turn, contacted the Allegheny County District Attorney's office and spoke with Assistant District Attorney Law Klaus ("Klaus").

Based on the discussion between Kascuta and Klaus, it was determined that if Rini was carrying a concealed firearm, he was in violation of Pennsylvania Crimes Code, Section 6106, for carrying a concealed weapon without a valid license.

At approximately 6:00 PM, thirty-five (35) to forty (40) minutes after the police initially arrived on the scene, Glick and Ciganik placed Rini under arrest and charged him with possession of a concealed firearm without a license, simple assault, and terroristic threats.

------

[2](...continued)
    The Act defines "privately employed agents" as "any person employed for the purpose of providing watch guard, protective patrol, detective or criminal investigative services either for another for a fee or for his employer. . . ."  22 P.S. § 41.

    The reserve side of the Act 235 license that Rini was carrying reads as follows: "**This is not a license to carry a firearm.**" (emphasis added) *(See Tab E, Exhibit 2).*

Rini's firearm was confiscated, processed for evidence, and sent to the Allegheny County Crime Lab for processing.

Prior to Rini's arrest, Emergency Medical Services ("EMS") paramedics were called to Roland's to examine Macon, who was visibly upset and acting "hysterical."   The paramedics provided no further treatment to anyone else at the scene, as no one else requested treatment.

After Rini's arrest, he was taken to the Zone 3 police station.  There, upon his request, EMS paramedics were called and examined Rini at the police station, but provided no treatment.  According to the paramedics, Rini had no visible signs of injury, including cuts, lacerations, signs of bleeding, or even bruising.  In fact, Rini's chief complaint was a headache. The paramedics determined that if Rini needed treatment, it was suitable for the police officers to transport him to the Emergency Room prior to going to jail.

Rini alleges that he told Glick and Ciganik that he wanted to go to the Emergency Room; however Glick and Ciganik both testified that they transported Rini directly to the Allegheny County Jail because he stated that he would rather go to jail than delay the process by going first to the hospital.

Upon arrival at the Allegheny County Jail, Rini was examined by a licensed medical provider.  He received no further treatment prior to his admittance to the jail.

The next day, February 17, 2004, Rini was released from jail on his own recognizance.  A Preliminary Hearing on the charges pending against Rini was scheduled by City of Pittsburgh District Court for February 24, 2004.  However, an agreement was reached whereby the charges would be dropped if Rini obtained a valid permit to carry a firearm within thirty (30) days.  The Preliminary Hearing was continued until March 24, 2004.

6

On or about March 18, 2004, Rini made application for a license to carry a firearm in the Commonwealth of Pennsylvania. The charges against Rini were thereafter withdrawn. According to the Withdrawal of Prosecution form, signed by Glick and the Assistant District Attorney, Rini had received "preliminary approval" for a firearms permit.  However, Rini eventually was denied a license by the Allegheny County Sheriff's office.

After the occurrence on February 16, 2004, Rini was fired from Roland's.  According to Croner, Rini had overreacted on the day of the incident and was out of line when he confronted Macon about the late payment on her vehicle.

To date, the City of Pittsburgh Crime Lab has not returned to Rini his firearm.


## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249).  Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the

summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.


DISCUSSION

A.      Claims Brought Under Section 1983

Section 1983 of title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  A *prima facie* case under § 1983 requires a plaintiff to demonstrate:  (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  Both elements must be present to sustain a § 1983 claim.   Thus, if there is no violation of a constitutional right, the claim cannot succeed.

It is undisputed that Defendants Glick and Ciganik are state actors.  Therefore, the remaining analysis focuses only on the second prong of the *prima facie* case, *i.e.*, has plaintiff demonstrated that the conduct deprived him of a right privilege, or immunity secured by the Constitution or laws of the United States.


1.      *Deliberate Indifference to Serious Medical Needs*

The "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman v. Township of Manalapan*, 47

F.3d 628, 627 (3d Cir. 1995).  "Deliberate indifference" requires proof that the officers knew of

the arrestees need for medical care and either (i) intentionally refused to provide such care, (ii)

delayed medical care for non-medical reason, or (iii) denied a reasonable request for treatment.

*Durmer v. Carol*, 991 F.2d 64, 68 (3d Cir. 1993).  A "serious medical need" is one that has

been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson

would recognize the need for a doctor's attention.  *Monmouth County Correctional Institutional*

*Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The uncontroverted evidence of record reflects that while Rini was still at Roland's,

paramedics arrived and rendered medical attention to Macon.  The paramedics provided no

further medical attention or treatment to anyone else present at the scene, as no one else

appeared in such need or requested medical treatment.

Once arrested, Rini was taken to the Zone 3 police station where he requested

medical attention.  EMS paramedics were called and examined Rini at the police station,

however, no medical treatment was necessary or warranted at the time.  According to the

deposition testimony of Jeffrey Rongaus ("Rongaus"), one of the paramedics who examined

Rini at the police station, Rini had no life threatening injuries and he had no obvious or visible

signs of injury, including cuts, lacerations, signs of bleeding, or bruising.  Rini complained of a

headache, for which the paramedics gave him aspirin.  (*See Depo. of Jeffrey Rongaus, pp. 7-8*).

Rongaus further testified that when he left the Zone 3 police station that day, "he

understood that the police were going to take [Rini] to the emergency room or hospital or

whatever they do."  *(Id., pp. 8-9.)*  Rongaus also testified that "[i]t was our understanding that if

he was complaining of a headache, that if he was under arrest, he should be seen at the

emergency room.  He just didn't request the transportation via EMS." (*Id., p. 9*). Rongaus admitted that an arrestee can refuse to go to the emergency room, and he had no knowledge of whether Plaintiff refused to go to the emergency room after he left him. *(Id., p. 10).*

Thereafter, Rini was transported to the Allegheny County Jail, whereupon he was again examined by a licensed medical provider.  Again, no medical treatment was warranted. Rini spent the night in jail and without requesting or receiving any further medical attention.

Plaintiff contends that Glick and Ciganik were deliberately indifferent to Rini's serious medical needs and violated police regulations[3] when they "refused" to take Rini to the hospital.

The Court finds and rules that Plaintiff has failed to establish that he was subjected to deliberate indifference to his "serious medical" needs.  The uncontroverted evidence establishes that Rini did not ask for medical treatment while the paramedics were at Roland's, he was examined by paramedics while at the Zone 3 police station and again by a licensed medical

---

[3]     Regulation 50-1, entitled "Pittsburgh Bureau of Police; Handling of Prisoners -
General Regulations" mandates as follows:

"Whenever a prisoner is brought to a zone station, the desk sergeant shall
carefully scrutinize the prisoner to determine whether or not he/she is
suffering from any illness or injury.  If a serious illness or injury is
discovered or suspected or the prisoner requests medical treatment, the desk
sergeant shall have such prisoner promptly conveyed under police
supervision to a hospital.  Under no circumstances shall an unconscious
prisoner be placed in or allowed to remain in a cell without medical
attention."

Pittsburgh Bureau of Police, Handling of Prisoners - General Regulations, ¶ 15.2,
Issue Date 6/1/00.

10

provider at the Allegheny County Jail.  Other than aspirin for a headache, his alleged injuries warranted no further medical treatment.

Plaintiff contends that he requested Glick and Ciganik to take him to the hospital, rather than jail; although both officers deny that Rini made this request.  However, viewing the evidence in the light most favorable to the Plaintiff, which the Court must do at this stage, and assuming that Rini did in fact make such a request, the officers were not required to take him to the hospital.  Again, Plaintiff did not ask for medical treatment while the paramedics were at Roland's, and he was provided medical treatment at the police station, after he requested same. Paramedic Rongaus testified that Rini had no life threatening injuries and he had no apparent or visible signs of injury, including cuts, lacerations, signs of bleeding, or bruising.

The Court finds that the police officers fulfilled their obligation by assuring that Rini was examined by qualified medical personnel.  *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983).   The standard for a violation of due process arising out of an alleged denial of medical treatment requires that the plaintiff establish that he suffered from a "serious illness or injury." *Groman*, 47 F.3d at 637.  Minor injuries which do not require hospital care do not satisfy the due process clause.  *Revere,* 463 U.S. at 244.

The Court finds and rules that Plaintiff has produced no evidence from which a reasonable factfinder could find that Plaintiff suffered from any "serious medical need" or that Defendants Glink and Ciganik were "deliberately indifferent" to his "serious medical needs." Accordingly, summary judgment will be granted to Defendants on this claim.

2.     *Denial of Due Process with Regard to the Confiscation and Denial of Return of His Firearm*

The Fourteenth Amendment forbids state actors from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.  Plaintiff alleges that Defendants violated his procedural due process rights by refusing to return his firearm which was seized at the time of his arrest.

Due process requires that adequate procedures accompany government action which potentially infringes upon a property interest. The first issue in a procedural due process inquiry is whether a due process interest was at stake.  Only upon a finding of a protected interest does the court inquire into whether the deprivation was without due process.  *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000); *Cospito v. Heckler,* 742 F.2d 72, 80 (3d Cir. 1984).

The Court will assume for the purpose of this Opinion only that Rini has a protected property interest in the seized firearm.  Therefore, the Court's analysis now must address whether Rini was afforded proper procedures in the dispossession and reacquisition of his firearm.

It is undisputed that Officers Glick and Ciganik obtained Rini's firearm from Wilder, and the firearm was in the trunk of Wilder's car at the time the officers made inquiry.  It is also undisputed that Wilder voluntarily presented the officers not only with the firearm, but also with his valid license to carry a firearm.  The Court finds, however, that once the police officers had probable cause to believe a crime had been committed, they properly seized Rini's firearm for evidence.  Therefore, there was no constitutional violation in the manner in which Rini's firearm was seized.

The Court also finds that Plaintiff's contention that he was denied the lawful return of his firearm is without merit.  The United States Court of Appeals for the Third Circuit has stated that "[i]n order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."  *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000).  According to the summary judgment record evidence, it is the policy and procedure of the City of Pittsburgh Bureau of Police to release evidence that is held at the City Property Room only when the owner signs and picks up the property from the City Property Room.  *(See City of Pittsburgh Bureau of Police Evidence Procedures, Order No. 36-1, Tab M - "Release to Owner - Owner must sign for and pick up the property at the Property Room.")*

It is undisputed that Rini has not made a formal request to the City for the return of his firearm, nor has he visited the City Property Room to sign a request for the return of his firearm.  Rather, Plaintiff, through counsel, contends that he "has demanded the return of Rini's firearm at the initial Rule 16 conference . . . and on numerous occasions to counsel for the City . . ." Pl's Br. at 12.   However, a request through counsel for the return of Rini's firearm is not sufficient.  As reflected in the *City of Pittsburgh Bureau of Police Evidence Procedures,* evidence that is held at the Property Room will be released only under one of the following listed circumstances:

> "•      Court Order - Property is to be picked up and signed for by the person named on the court order. (Pittsburgh police officers are not authorized to request a court order to release property to them.);
>
> •      Needed for Court - Must be signed out and back in by officer;

- **Release to Owner - Owner must sign for and pick up the property at the Property Room**;

- Income Tax Levy;

- Federal authorities when they assume jurisdiction in a case;

. . Items to be sent to another police agency."

*(City of Pittsburgh Bureau of Police Evidence Procedures, Order No. 36-1, Tab M - "Release to Owner - Owner must sign for and pick up the property at the Property Room"* - emphasis added).

Accordingly, the Court finds and rules that Plaintiff has not followed the proper protocol for the return of his firearm and, thus, summary judgment will be granted to Defendants on this issue.

3.    *Denial of Equal Protection*

Plaintiff alleges that it was the custom, practice or policy of Glick and Cigantik to disparately treat African-American male citizens. *Complaint, at ¶ 42.*  Plaintiff argues that "Glick and Cigantik treated him differently because of his race." *Pl's Br. at 14.*   In order to establish an equal protection claim under the Fourteenth Amendment to the United States Constitution, a plaintiff must prove that the actions of a party acting under color of state law "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002).

It is undisputed that upon the arrival of Glick and Ciganik at Roland's, the only individual who was <u>not</u> African-American was Marsha Boehm.  Rini, Wilder, Hutchinson,

14

Macon, Coleman, Croner, and Shawn Green, a mechanic at Roland's, are all African-American.[4]  The undisputed record evidence also reflects that no one, other than Rini, were arrested or charged.  The Court finds and rules that Plaintiff has proffered no evidence from which a reasonable factfinder could find that the arrest of Rini had a discriminatory effect or that similarly situated individuals would have been afforded different treatment than Rini received.

Furthermore, Plaintiff has proffered absolutely no evidence from which a reasonable factfinder could find that the arrest of Rini by Glink and Ciganik was motivated by any discriminatory purpose.

Accordingly, summary judgment will be granted to Defendants on Plaintiff's claim of denial of equal protection.

4.      *False Arrest and/or False Imprisonment, Malicious Prosecution,[5] and Improper Search and Seizure*

In order to establish a constitutional violation of  false arrest, false imprisonment, malicious prosecution, or improper search and seizure under § 1983, Plaintiff must establish

---

[4]      Glick and Ciganik are both adult, white males.  *Complaint, at ¶¶ 4,5.*

[5]      Though there is no Fourteenth Amendment substantive due process right to be free from malicious prosecution, *see Albright v. Oliver*, 550 U.S. 266, 271 (1994); the United States Supreme Court has not foreclosed the possibility that a malicious prosecution cause of action may be actionable under the Fourth Amendment in a § 1983  claim, *see Albright,* 550 U.S. at 275.  Accordingly, despite the fact that Rini's complaint does not allege a specific constitutional provision under which his malicious prosecution claim arises, construing his allegations in the light most favorable to Rini, the Court will assume that the claim is pled under the Fourth Amendment.

15

that probable cause did not exist for his arrest.  *Groman v. Township v. Manalapan,* 47 F.3d

629, 636 (3d Cir. 1995).  Probable cause to arrest exists when the facts and circumstances

within the arresting officers'  knowledge "are sufficient in themselves to warrant a reasonable

person to believe that an offense has been or is being committed by the person to be arrested."

*United States v. Cruz*, 910 F.3d 1072, 1076 (3d Cir. 1990), *cert. denied*, 498 U.S. 1039 (1991).

*See also Beck v. Ohio,* 379 U.S. 89 (1964); *United States v. Belle,* 593 F.2d 487, 497 n. 15 (3d

Cir. 1979), *cert. denied*, 442 U.S. 911 (1979).   "While a 'bare suspicion' of criminal activity is

not sufficient to establish probable cause, neither are police required to have enough evidence

to justify a conviction before they make a warrantless arrest."  *See United States v. Morales*,

923 F.2d 621, 624 (8th Cir. 1991).

      While Plaintiff baldly asserts that "Glick knowingly and deliberately, or with total

disregard for the truth, made false statements or omissions that created a falsehood in filing his

charges . . . ,"  the record, however, is completely devoid of any evidence that Glick asserted or

created any falsehoods.   In fact, the deposition testimony of each of the witnesses who were

inside Roland's confirms that each witness told Glink and Ciganik that they thought Rini was

carrying a firearm and that they felt threatened by Rini's actions.

      In sum, given the totality of the circumstances, the Court finds and rules  that Glick

and Ciganik had a more than adequate reasonable basis to believe that Rini had committed an

offense (*i.e.,* carrying a concealed weapon without a license) which justified his arrest on

February 16, 2004.  Accordingly, summary judgment will be granted to Defendants on these

claims.

B.        Claims of Against Glick and Ciganik In Their Individual Capacities

1.        *Common Law Claims of False Arrest and Malicious Prosecution*

For the same reasons discussed at length *supra,* the finding that probable cause existed for the arrest of Rini on February 16, 2004, precludes any common law cause of action for false arrest and malicious prosecution against the individual Defendants.

Additionally, Plaintiff's claim for malicious prosecution must also fail as he cannot prove that the underlying criminal prosecution was terminated in his favor.  The United States Court of Appeals for the Third Circuit has instructed that entry of a *nolle prosequi* dismissal is not a favorable termination because the prosecutor's motion was not based upon the accused's innocence.  *Donahue v. Gavin,* 280 F.3d 371 (3d Cir. 2002).  The summary judgment evidence in this case establishes that the charges against Rini were withdrawn not based on Rini's innocence; rather, the dismissal of the charges was based on Rini's representation to Officer Glick and the Assistant District Attorney that he had "preliminary approval" for a license to carry a firearm.

Accordingly, summary judgment will be granted to Defendants Glick and Ciganik, individually, on Plaintiff's state law claims of false arrest and malicious prosecution.


2.        *Common Law Claim of Defamation*[6]

Plaintiff claims that Glick and Ciganik made defamatory statements in the Affidavit of Probable Cause and the Criminal Complaint.  *See Complaint, at ¶¶ 55-63.*  A *prima facie*

---

[6]        The Court notes that Plaintiff did not address this argument in his Brief in Opposition to Defendants' Motion for Summary Judgment.

17

claim for defamation requires the plaintiff to prove (i) a defamatory communication; (ii) which pertains to the plaintiff; (iii) published by the defendant to a third party; (iv) who understands the communication to have defamatory meaning with respect to the plaintiff; and (v) that results in plaintiff's injury. *Smith v. School District of Philadelphia*, 112 F. Supp. 2d 417 (E.D. Pa. 2000).

Under Pennsylvania law, an allegedly defamatory communication is conditionally privileged when it is made upon a proper occasion for a proper motive and based on reasonable cause. Abuse of a conditional privilege occurs when the publication is made with actual malice or negligence. *See Rest. (2nd) Torts, § 611.*[7] Further, "an arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section." *Rest. (2nd) Torts, § 611, Comment h.*

Moreover, in Pennsylvania, "malice" in the context of a defamation claim is defined as a publication of a statement either with knowledge of its falsity or with reckless disregard of its falsity. *Smith v. Greyhound Lines, Inc.*, 614 F. Supp. 558 (W.D. Pa. 1984). "Malice" is not demonstrated by negligence, carelessness, bad judgment or inaccuracy in the preparation of the allegedly defamatory document. *Raffensberger v. Moran*, 485 A.2d 447 (Pa. Super. 1984).

---

[7]     Section 611 of the Restatement, 2nd Torts, provides as follows:
"The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported."

The Court finds and rules that Plaintiff has produced absolutely no evidence which would establish knowledge of falsity or reckless disregard on the part of Glick and Ciganik and which would defeat the conditional privilege provided by Section 611 of the Restatement (2d) Torts.   Accordingly, summary judgment will be granted to Defendants Glick and Ciganik, individually, on Plaintiff's state law claim of defamation.

C.      Claims Against the City of Pittsburgh

Plaintiff's Complaint sets forth broad claims of municipal liability against the City of Pittsburgh, i.e., "the City of Pittsburgh, acting by and through its agents, employees and/or official, failed to adequately train and/or supervise the actions/inactions, of the Defendants, Glick and Ciganik, and as a result, Mr. Rini suffered . . . damages . . . ." *Complaint, at ¶ 42.* To sustain a § 1983 claim against a municipality, a plaintiff must show that the action in question was taken pursuant to a governmental policy.  *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978).

Plaintiff has completely failed to adduce evidence to establish that the City of Pittsburgh has a custom, policy, or practice of depriving individuals of their constitutional rights and/or that the City of Pittsburgh has failed to properly train or supervise its employees. There is absolutely no record evidence that the City of Pittsburgh was deliberately indifferent with respect to the supervision or discipline of its officers.  The Court finds and rules that the bald assertions of Plaintiff are not supported by any testimony or evidence of record. Accordingly, summary judgment will be granted to the City of Pittsburgh on all claims brought against it by Plaintiff.

## Conclusion

Viewing the facts in the light most favorable to Plaintiff, the Court finds that he has failed to establish that Defendants violated his constitutional rights. Further, the Court finds that Plaintiff has failed to establish his claims of false arrest, defamation and malicious prosecution under Pennsylvania common law against Officers Glink and Ciganik, individually. Accordingly, the Joint Motion for Summary Judgment filed by Defendants will be granted in its entirety.

An appropriate order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN RINI,                   )

                    )

               Plaintiff,    )

                    )

         v.            )     02: 05cv0198

                    )

CITY OF PITTSBURGH; JAMES GLICK;   )

and GEORGE CIGANIK, individually and   )

officially,              )

                    )

            Defendants.   )

## ORDER OF COURT

AND NOW, this 21st day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, AND DECREED** that the Joint Motion for Summary Judgment filed by Defendants, City of Pittsburgh; James Glick; and George Ciganik, individually and officially, is **GRANTED** and judgment is hereby entered in favor of Defendants.

The clerk is ordered to docket this case closed.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc:     Gianni Floro, Esquire
        Email: gfloro@tarasilaw.com

        Michael E. Kennedy
        City of Pittsburgh Department of Law
        Email: michael.kennedy@city.pittsburgh.pa.us

        Bryan Campbell, Esquire
        Email: bryancmpbl@yahoo.com